# 25-0155-cv

## United States Court of Appeals for the Second Circuit

---

UNITED STATES EX REL. W. BENSON CHILES,
UNITED STATES EX REL. CHRIS MANTHEY,

*Plaintiffs-Appellants,*

ABC, UNITED STATES OF AMERICA, ex rel.,

*Plaintiffs,*

v.

COOKE INC., COOKE AQUACULTURE INC., COOKE OMEGA
INVESTMENTS INC., COOKE SEAFOOD USA INC., OMEGA PROTEIN
CORPORATION, OMEGA PROTEIN, INC., GLENN COOKE, BRET D.
SCHOLTES, BMO CAPITAL MARKETS CORP., ALPHA VESSELCO
HOLDINGS, INC., ALSO KNOWN AS OCEAN FLEET SERVICES, INC.,

*Defendants-Appellees,*

*(See Inside Cover for Completion of Caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

### BRIEF FOR DEFENDANT-APPELLEE
### BMO CAPITAL MARKETS CORP.

---

DLA PIPER LLP
*Attorneys for Defendant-Appellee*
*BMO Capital Markets Corp.*
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
(212) 335-4500
courtney.saleski@us.dlapiper.com
jessica.masella@us.dlapiper.com

3391



ELECTRONIC
PARALEGAL

---

ALPHA VESSELCO LLC, DOING BUSINESS AS OCEAN HARVESTERS,
SETH GREGORY DUNLOP, GREGORY LAWSON DUNLOP,
MONTGOMERY DEIHL,

*Defendants-Appellees,*

DEF,

*Defendant.*

---

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellee BMO Capital Markets Corp. ("**BMO CMC**") states, by and through its counsel, that it is organized under the laws of Delaware and is a wholly owned U.S. subsidiary of Bank of Montreal, a Canadian company. No other publicly held corporation owns 10% or more of BMO CMC's stock.

**DLA PIPER LLP (US)**

By: *  /s/ Courtney Saleski  *
    Courtney Saleski
    Jessica A. Masella

1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
courtney.saleski@us.dlapiper.com
jessica.masella@us.dlapiper.com

*Attorneys for Defendant-Appellee*
*BMO Capital Markets Corp.*

## Table of Contents

Page

INTRODUCTION ................................................................. 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............ 3

STATEMENT OF THE CASE .............................................. 4

    A.   Legal Framework. ................................................. 4

    B.   Factual Background. .............................................. 7

    C.   Procedural History. ............................................... 9

    D.   The Amended Complaint's Allegations. ............................ 11

SUMMARY OF ARGUMENT ................................................ 14

ARGUMENT ................................................................... 15

I.    THE JUDGMENT BELOW SHOULD BE AFFIRMED FOR THE REASONS SET FORTH IN THE COOKE AND VESSELCO BRIEF. ........................................................ 15

II.   ADDITIONAL ISSUES NOT REACHED BY THE DISTRICT COURT WARRANT DISMISSAL. ........................... 15

    A.   Relators Failed to Plead that BMO CMC Submitted a False Claim or Made or Used a Statement Material to a False Claim or Reverse False Claim. ............................ 16

    B.   Relators Failed to Satisfy Rule 9(b) by Pleading with Particularity that BMO CMC Caused a False Claim to be Submitted or Caused to be Made or Used Any Statement Material to a False Claim or Reverse False Claim. ............................................................ 18

    C.   Relators Failed to Plead that BMO CMC Conspired to Violate the FCA. ................................................. 28

CONCLUSION .................................................................. 32

Table of Authorities

Page(s)

**Cases:**

*Allison Engine Co. v. United States ex rel. Sanders*,
    553 U.S. 662 (2008) ................................................................ 17, 21

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
    587 U.S. 262 (2019) ........................................................................ 19

*Comm'r v. Acker*,
    361 U.S. 87 (1959) ........................................................................... 27

*Coulter v. Morgan Stanley & Co.*,
    753 F.3d 361 (2d Cir. 2014) ............................................................. 16

*Miller v. United States ex rel. Miller*,
    110 F.4th 533 (2d Cir. 2024) .......................................................... 5, 6

*Olson v. Major League Baseball*,
    29 F.4th 59 (2d Cir. 2022) ............................................................... 16

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002) ............................................................. 12

*U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*,
    736 F. Supp. 2d 804 (S.D.N.Y. 2010) .............................................. 30

*United States ex rel. Bassan v. Omnicare, Inc.*,
    2025 WL 551610 (S.D.N.Y. Feb. 19, 2025) ..................................... 20

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*,
    50 F. Supp. 3d 497 (S.D.N.Y. 2014) .................................................. 6

ii

*United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*,
  551 F. Supp. 3d 27 (E.D.N.Y. 2021), *aff'd*,
  2022 WL 17818587 (2d Cir. Dec. 20, 2022) .............................. 6, 28

*United States ex rel. Daugherty v. Tiversa Holding Corp.*,
  342 F. Supp. 3d 418 (S.D.N.Y. 2018) ............................................ 25

*United States ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*,
  660 F. Supp. 3d 381 (E.D. Pa. 2023)........................................28-29

*United States ex rel. Foreman v. AECOM*,
  19 F.4th 85 (2d Cir. 2021) ............................................................ 5

*United States ex rel. Henig v. Amazon.com, Inc.*,
  2025 WL 27736 (S.D.N.Y. Jan. 3, 2025) .................................. 20, 23

*United States ex rel. Hutcheson v. Blackstone Med., Inc.*,
  647 F.3d 377 (1st Cir. 2011)......................................................... 24

*United States ex rel. Kirk v. Schindler Elevator Corp.*,
  601 F.3d 94 (2d Cir. 2010), *rev'd on other grounds*,
  563 U.S. 401 (2011) .................................................................. 4-5

*United States ex rel. McSherry v. SLSCO, L.P.*,
  2024 WL 1934443 (E.D.N.Y. May 2, 2024) .................................. 20

*United States ex rel. Patriarca v. Siemens Healthcare Diagnostics, Inc.*,
  295 F. Supp. 3d 186 (E.D.N.Y. 2018)............................................ 30

*United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*,
  405 F. Supp. 3d 549 (S.D.N.Y. 2019) ............................................. 5

*United States ex rel. Scharff v. Camelot Counseling*,
  2016 WL 5416494 (S.D.N.Y. Sept. 28, 2016)............................. 6, 29

*United States ex rel. Schmidt v. Zimmer, Inc.*,
  386 F.3d 235 (3d Cir. 2004)..................................................... 20, 21

*United States ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023) ........................................................ 25

*United States ex rel. Schwedt v. Plan. Rsch. Corp.*,
    59 F.3d 196 (D.C. Cir. 1995) ......................................... 19

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
    472 F.3d 702 (10th Cir. 2006) ............................... 19, 20, 25, 26, 27

*United States ex rel. Taylor v. Gabelli*,
    345 F. Supp. 2d 313 (S.D.N.Y. 2004) ............................. 5-6

*United States ex. rel. Feldman v. City of New York*,
    808 F. Supp. 2d 641 (S.D.N.Y. 2011) ............................. 21

*United States v. First National Bank of Cicero*,
    957 F.2d 1362 (7th Cir. 1992) ....................................... 24

*United States v. Hibbs*,
    568 F.2d 347 (3d Cir. 1977) .......................................... 19

*United States v. Luce*,
    873 F.3d 999 (7th Cir. 2017) ................................. 20, 24, 19

*United States v. Miller*,
    645 F.2d 473 (5th Cir. 1981) .................................... 19, 25

*United States v. Murphy*,
    937 F.2d 1032 (6th Cir. 1991) ....................................... 26

*United States v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*,
    2014 WL 3905742 (S.D.N.Y. Aug. 7, 2014) ................... 29

*United States v. Spectrum Painting Corp.*,
    2020 WL 5026815 (S.D.N.Y. Aug. 25, 2020) ................ 28

iv

*United States v. Teva Pharms. USA, Inc.,*
    2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019) ............................ 20-21

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
    579 U.S. 176 (2016) ............................................................ 24

**Rules, Laws, Statutes & Regulations:**

31 U.S.C. § 3729(a) ................................................................... *Passim*

31 U.S.C. § 3729-3733 ................................................................. 4

46 C.F.R. § 356.5 ....................................................................... 7

46 U.S.C. § 12105(3) ................................................................. 7

46 U.S.C. § 12113(b) ............................................................... 6, 7

46 U.S.C. § 12151 ....................................................................... 7

49 U.S.C. § 109(a) ..................................................................... 7

Federal Rule of Appellate Procedure 28(i) ............................ 2, 3, 14, 15

Federal Rule of Appellate Procedure 32 ................................ 32

Second Circuit Rule 32.1 ........................................................ 32

v

## INTRODUCTION

Relators provide limited allegations connected to Defendant-Appellee BMO Capital Markets Corp. ("**BMO CMC**") in this *qui tam* proceeding brought on behalf of the United States of America under the False Claims Act ("**FCA**") for alleged violations of the American Fisheries Act of 1998 ("**AFA**"). BMO CMC is not alleged to have operated any fishing vessels. BMO CMC is not alleged to have had any role in submitting AFA certifications to the government. BMO CMC is not alleged to have played any role in advising on the structure of the acquisition. The only allegations of BMO CMC's conduct are limited to its role as underwriter and initial purchaser of notes issued to finance a portion of an acquisition. Indeed, Relators make no mention of any allegations of BMO CMC's conduct in their appellate brief.

For that reason, BMO CMC adopts the Joint Brief of Defendants-Appellees Cooke and VesselCo[1] (the "**Cooke and VesselCo Brief**"),

---

[1] Defendants-Appellees Cooke Inc., Cooke Aquaculture Inc., Cooke Omega Investments Inc., Cooke Seafood USA, Inc., Omega Protein Corporation, Omega Protein, Inc., Glenn Cooke, and Bret D. Scholtes (the "**Cooke Defendants-Appellees**"), and Defendants-Appellees Alpha VesselCo Holdings, Inc., Alpha VesselCo, LLC, Seth Dunlop, Gregory Dunlop, and Montgomery Deihl (the "**VesselCo Defendants-Appellees**").

pursuant to Federal Rule of Appellate Procedure 28(i), which provides sufficient reasoning for this Court to affirm the District Court's dismissal of the Amended Complaint with prejudice.  But if this Court were to choose to do so, it also can affirm dismissal of the case in its entirety on the grounds argued by BMO CMC below that Relators failed to plead that BMO CMC (1) presented a false claim, or made or used a false record or statement material to a false claim or reverse false claim; (2) caused a false claim to be presented, or caused the making or use of a false record or statement material to a false claim or reverse false claim; or (3) conspired to violate the FCA.

In any event, this Court should affirm the District Court's dismissal of the Amended Complaint with prejudice as to BMO CMC.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Defendant-Appellee BMO CMC fully incorporates and adopts by reference the Issues Presented in the Cooke and VesselCo Brief. *See* Fed. R. App. P. 28(i).

2. If this Court chooses to address issues not reached by the District Court but briefed by BMO CMC, whether dismissal with prejudice with respect to BMO CMC should be affirmed on the alternative grounds that:

   A. Relators did not allege that BMO CMC submitted a false or fraudulent claim for payment to the government, or made or used any record or statement material to a false claim or an obligation to pay money or property to the government;

   B. Relators did not allege that BMO CMC's conduct proximately caused the submission of a false or fraudulent claim for payment to the government, or proximately caused the making or use of any record or statement material to a false claim or an obligation to pay money or property to the government; and

C. Relators did not allege that BMO CMC entered into any agreement with another to defraud the government.

## STATEMENT OF THE CASE

**A. Legal Framework.**

This appeal involves a *qui tam* proceeding brought on behalf of the United States of America under the FCA, 31 U.S.C. §§ 3729-3733, for alleged violations of the AFA. The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to an officer or employee of the United States, 31 U.S.C. § 3729(a)(1)(A), "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* at (a)(1)(B), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay . . . the Government," *id.* at (a)(1)(G), "or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay . . . the Government," *id.*

Sections 3729(a)(1)(A) and (a)(1)(B) require plaintiffs to allege that the "defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Kirk v.*

4

*Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other grounds,* 563 U.S. 401 (2011); *see also United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 405 F. Supp. 3d 549, 555 (S.D.N.Y. 2019) (noting that courts "generally treat" Sections 3729(a)(1)(A) and (a)(1)(B) "together, as their elements overlap significantly"). Section 3729(a)(1)(G) "is referred to as the reverse false claims provision because it covers claims of money *owed* to the government, rather than payments *made* by the government." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021). To state a reverse false claim, plaintiffs must allege that defendants "knowingly ma[de], us[ed], or caus[ed] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government," or "knowingly conceal[ed]," or "improperly avoid[ed] or decreas[ed] an obligation to pay or transmit money or property to the Government." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 542 (2d Cir. 2024) (quoting 31 U.S.C. § 3729(a)(1)(G)). "Under any theory of a reverse false claim, . . . the relator must allege an 'obligation' to pay money or property to the government." *Id.* at 542. A claim of conspiracy to violate the FCA, requires "an underlying wrongful act." *United States ex rel. Taylor v.*

5

*Gabelli*, 345 F. Supp. 2d 313, 336 (S.D.N.Y. 2004); *accord United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 48 (E.D.N.Y. 2021), *aff'd*, 2022 WL 17818587 (2d Cir. Dec. 20, 2022).

FCA claims also must meet Rule 9(b)'s heightened pleading standard requiring plaintiffs to plead the "particular details of a fraudulent scheme." *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp. 3d 497, 509 (S.D.N.Y. 2014); *see also Miller*, 110 F.4th at 547–48 ("A *qui tam* plaintiff . . . does not state a reverse false claim if the allegations in the complaint are not pleaded with the particularity required by [Rule 9(b)]."); *United States ex rel. Scharff v. Camelot Counseling*, 2016 WL 5416494, at *9 (S.D.N.Y. Sept. 28, 2016) (holding that complaint alleging "a 'conspiracy' to violate the FCA" failed to satisfy Rule 9(b)).

Under the AFA, a vessel must have a valid fishery endorsement to engage in commercial fishing in U.S. waters. 46 U.S.C. § 12113(b)(1). To be eligible for a fishery endorsement, the vessel must be "owned by an entity [with] at least 75 percent of the interest in the entity . . . owned and controlled by citizens of the United States." *Id.* § 12113(c)(1) (the

"**AFA Citizenship Requirement**"). The Maritime Administration ("**MARAD**") and United States Coast Guard ("**Coast Guard**") are responsible for determining eligibility for fishery endorsements. *See* 46 C.F.R. § 356.5; 46 U.S.C. §§ 12105(3)(a), 12113(e)(1); 49 U.S.C. § 109(a). If an entity fails to comply with the AFA's citizenship requirement, then the fishery endorsement may be revoked, and civil penalties may be imposed. *See* 46 U.S.C. § 12113(h); *id.* § 12151(a).

## B.   Factual Background.

In 2017, Cooke, Inc. ("**Cooke**"), a Canadian corporation, acquired Omega Protein, Inc. and Omega Protein Corporation (collectively "**Omega**"), a U.S.-based fishing company. (A-79 ¶ 5). As part of that transaction—and in compliance with the AFA Citizenship Requirement—Omega sold its fishing vessels (the "**Vessels**") to Alpha VesselCo Holdings, Inc. (a/k/a Ocean Fleet Services), which is 80% owned by a U.S. citizen named Seth Dunlop (together with the purchase of Omega, the "**Acquisition**"). (A-80 ¶ 7). The Acquisition was achieved by way of a Merger Agreement and a Purchase and Sale Agreement (the "**Sale Agreements**"). (A-99 ¶¶ 61-62). Prior to closing, Cooke disclosed in detailed letters to MARAD (the "**MARAD Submissions**") the

proposed structure of the Acquisition and requested confirmation that it complied with the AFA Citizenship Requirement. (A-113 ¶ 103, A-114 ¶ 105; *see also* SA-167-72, ECF No. 53-1; SA-174-78, ECF No. 53-2). On September 29, 2017 and again on December 6, 2017, MARAD confirmed that, based on the information provided, the Vessels would "be eligible for fishery endorsements upon their Acquisition." (*See* SA-180, ECF No. 53-3; A-115 ¶ 108). Only after receiving MARAD's September 2017 preliminary confirmation did Cooke execute the Sale Agreements, (A-99 ¶ 60), and engage BMO CMC to assist in financing a portion of the Acquisition, (A-100 ¶ 63). The Acquisition subsequently closed on December 17, 2017. (A-100 ¶ 64).

Appellee BMO CMC is a financial services company that had the circumscribed role of financing a portion of the Acquisition. To finance the Acquisition, Cooke Omega Investments Inc. and Alpha VesselCo Holdings, Inc. co-issued $330 million in Senior Secured Notes (the "**Notes**") underwritten by BMO CMC.[2] (A-83-84 ¶ 16). BMO CMC also served as initial purchaser of the Notes and subsequently marketed and

---

[2] Notably, DNB Capital LLC also financed a portion of the Acquisition but is not a defendant in this litigation. (*See* A-89 ¶ 30).

sold the Notes to potential investors. (A-83-84 ¶ 16). BMO CMC's role with respect to the Acquisition (and any incidental involvement in the acquisition of the Vessels, to the extent such involvement existed), terminated upon the closing of the Acquisition and completion of the Notes transaction.

## C. Procedural History.

On July 2, 2021, the Relators—neither of whom claims to have first-hand knowledge of the alleged "scheme" at the core of their lawsuit—filed this *qui tam* action. (*See* A-6, ECF No. 1, 2). On March 8, 2024, after conducting a multi-year investigation into Relators' allegations, the Department of Justice issued its Notice of Decision to Decline Intervention. (*See* A-6, ECF No. 6). On April 23, 2024, the Complaint was unsealed (*see* A-6, ECF No. 5) and subsequently served on Defendants.

The Complaint alleged that Defendants violated Section 3729(a)(1)(A) of the FCA by presenting or causing to be presented a false claim for fishery endorsements (Count I); violated Section 3729(a)(1)(B) of the FCA by making, using, or causing to be made or used, a false record or statement material to a claim for fishery endorsements (Count II); and

9

violated Section 3729(a)(1)(C) by conspiring to do the same (Count III). (A-68-A-73 ¶¶ 151–167). Relators claimed that the fishing licenses were fraudulently obtained because Cooke's 2017 letters to MARAD withheld material information regarding the ownership and control of the Vessels. (A-18-19 ¶ 1). The Complaint's limited allegations related to BMO CMC focused solely on BMO's role in financing the Acquisition and marketing the Notes. (*See, e.g.*, A-30 ¶ 29; A-41 ¶ 63; A-46-49 ¶¶ 82-87).

Defendants moved to dismiss the Complaint, (A-10-11, ECF No. 34, 38, 41), and the Cooke and VesselCo Defendants attached the MARAD Submissions to their motions to demonstrate that the precise information allegedly withheld was in fact disclosed to MARAD. (SA-34-35, ECF No. 36; SA-118-19, ECF No. 40). On July 15, 2024, the District Court entered an Order allowing Relators until July 30, 2024, to file any amended complaint, and stating that "Relators will not be given any further opportunity to amend the complaint to address issues raised by the motions to dismiss." (*See* A-11, ECF No. 43). Relators then filed the Amended Complaint on July 30, 2024, and added an additional count (Count IV) alleging a reverse false claim under Section 3729(a)(1)(G). (A-130-137 ¶¶ 173–181). The few allegations related to BMO CMC were

10

neither supplemented nor changed in the Amended Complaint. (*See* A-89 ¶ 29; A-100 ¶ 63; A-105-107 ¶¶ 82–85). Defendants moved to dismiss the Amended Complaint. (A-12, ECF No. 51, 55, 59).

On January 3, 2025, the District Court issued an Order granting the Defendants' motions to dismiss the Amended Complaint with prejudice. (A-14-15, ECF No. 78). The District Court found that Relators failed to state a claim under FCA Sections 3729(a)(1)(A) or 3729(a)(1)(B) (and failed to plead a conspiracy to do the same) because neither fishing licenses nor fish qualify as "property" within the meaning of the FCA, (A-283-294), and that Relators failed to state a reverse false claim because they could not allege a "duty to pay" the government, (A-294-298). Moreover, the District Court denied Relators' request to amend their complaint a second time, noting that the Court had expressly warned Relators that they would "not be given any further opportunity" to amend and finding, in any event, that amendment would be futile. (A-298-299). This appeal followed. (A-300).

## D. The Amended Complaint's Allegations.

As noted above, the Amended Complaint's limited allegations regarding BMO CMC—which are not mentioned in Relators' appellate

11

brief at all—were identical to those in Relators' initial Complaint, focusing only on BMO CMC's role in financing the Acquisition and marketing the Notes.[3] Even with the benefit of seeing the unredacted MARAD Submissions, Relators alleged (incorrectly) that "Defendants were more forthcoming" with private investors than they were with MARAD. (A-105-106 ¶ 82). For instance, Relators alleged that the "investor materials," including the Offering Memorandum and Roadshow Presentation, stated that Seth Dunlop is related to the Cooke CEO and was an employee of Cooke. (A-106-107 ¶¶ 83–85). But this information was, in fact, disclosed in the MARAD Submissions. (*See* SA-168, ECF No. 53-1; SA-175, ECF No. 53-2). Based on pure speculation, Relators claimed that the purpose of including this information in the investor materials was "to reassure investors that the new owner of the [Vessels]

---

[3] Relators also repeated the conclusory allegation that BMO CMC acted in "its dual capacity as former advisor to Omega in connection with its pre-Acquisition efforts to execute a strategic sale of certain of its business lines, and as the Initial Purchaser and underwriter of the Notes." (A-68 ¶ 150). This is false and, in any event, "conclusory allegations . . . will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). BMO CMC did not act in any capacity on behalf of Omega with respect to the Acquisition.

was merely a figurehead" and "to show that MARAD might be tricked into thinking he met the AFA Citizenship Requirement." (A-106 ¶ 83). Without any factual support, and in spite of the evidence that these materials were both accurate and consistent with the MARAD Submissions, Relators asserted that the offering materials "communicate[d] Defendants' intention to control the nominal owner of the [Vessels] and clarifie[d] the reasons why investors should trust that Defendants would in fact continue to exercise control even though the vessels were 'sold.'" (A-122 ¶ 126).

The Amended Complaint did not allege that BMO CMC played any role in advising on the structure of the Acquisition or any role in submitting certifications to MARAD concerning compliance with the AFA Citizenship Requirement or any other matter. Indeed, the Amended Complaint shows that BMO CMC has had zero involvement with any of the Defendants apart from underwriting and marketing the Notes after MARAD twice confirmed—once in September 2017 and again on December 6, 2017—that the Acquisition's structure complied with the AFA Citizenship Requirement. (*See* A-100 ¶ 63 (alleging that Cooke and BMO CMC "executed a debt commitment letter" on October 5, 2017); A-

83-84 ¶ 16 (alleging that BMO CMC marketed the Notes using a December 2017 "Roadshow Presentation")). Additionally, the Amended Complaint of course did not allege that BMO CMC operates fishing vessels. Thus, Relators' addition of BMO CMC—a financial services company that facilitates investment banking transactions—as a defendant in this case is perplexing.

## SUMMARY OF ARGUMENT

*First*, the District Court's judgment should be affirmed for the reasons set forth in the Cooke and VesselCo Brief. *See* Fed. R. App. P. 28(i).

*Second*, while the District Court correctly dismissed the Amended Complaint on the grounds that Relators did not plead either a claim for "property" or a reverse false claim—and this Court can and should affirm on that basis alone—this Court can also affirm based on reasons not reached by the District Court but briefed by BMO CMC. Specifically, Relators failed to plead that BMO CMC ever (1) submitted a false claim or made or used a record or statement material to a false claim or a reverse false claim; (2) caused a false claim to be submitted, or caused the making or use of a false record or statement material to a false claim

or reverse false claim; or (3) participated in any conspiracy to defraud the federal government. In fact, Relators' appellate brief makes no mention of *any* allegations against BMO CMC.

Accordingly, the Court should affirm the District Court's Order dismissing the Amended Complaint with prejudice as to BMO CMC.

**ARGUMENT**

**I.  THE JUDGMENT BELOW SHOULD BE AFFIRMED FOR THE REASONS SET FORTH IN THE COOKE AND VESSELCO BRIEF.**

The District Court correctly found that this action should be dismissed with prejudice for the reasons described in the Cooke and VesselCo Brief. Pursuant to Federal Rule of Appellate Procedure 28(i), BMO CMC adopts by reference those arguments. This Court should therefore affirm the District Court's dismissal of the Amended Complaint with prejudice as to BMO CMC.

**II.  ADDITIONAL ISSUES NOT REACHED BY THE DISTRICT COURT WARRANT DISMISSAL.**

This Court can and should affirm the District Court's Order of dismissal with prejudice based on the holdings below as discussed above. The Court also has the authority, should it choose to exercise it, to reach other grounds for dismissal briefed below but not analyzed by the District

Court. *See, e.g.*, *Olson v. Major League Baseball*, 29 F.4th 59, 84 (2d Cir. 2022) (An appellate court can affirm an order of dismissal "on any ground supported by the record."); *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (same). This Court can therefore affirm dismissal of the case in its entirety on the grounds that Relators failed to plead that BMO CMC (1) presented a false claim, or made or used a false record or statement material to a false claim or reverse false claim; (2) caused a false claim to be presented, or caused the making or use of a false record or statement material to a false claim or reverse false claim; or (3) conspired to violate the FCA.

### A. Relators Failed to Plead that BMO CMC Submitted a False Claim or Made or Used a Statement Material to a False Claim or Reverse False Claim.

Despite having two opportunities to do so, Relators failed to plausibly state a claim against BMO CMC under FCA Sections 3729(a)(1)(A), (a)(1)(B), or (a)(1)(G). (*See generally* A-18-74; A-77-138). Even assuming Relators can plead falsity (they cannot), Relators did not even attempt to allege, nor could they, that BMO CMC was the entity to *present* a false claim for payment, or to *make* or *use* a record or statement material to a false claim for payment or an obligation to pay the

16

government.  *See* 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), (a)(1)(G).  As alleged in the Amended Complaint, "the AFA . . . requires *owners of fishing vessels*" to submit "a statement of citizenship."  (A-95 ¶ 47 (emphasis added)).  BMO CMC is not the owner of the Vessels.  (*See* A-85 ¶ 21 ("Alpha VesselCo . . . hold[s] legal title to the [Vessels]")).  Additionally, while the District Court correctly held that a discretionary statutory penalty is not an "obligation" within the meaning of the FCA (A-298), Relators did not (and cannot) allege that BMO CMC was the entity against whom such penalties would be assessed.  (*See, e.g.*, A-78 ¶ 2 ("The AFA imposes . . . statutory penalties on *entities that engage in commercial fishing* . . .") (emphasis added)).  Instead, Relators' allegations are limited to BMO CMC's conduct as underwriter and initial purchaser of the Notes issued to finance a portion of the Acquisition.  There is no legal basis on which to claim that BMO CMC's truthful statements to private parties (the investors) in relation to a separate transaction were material to any false claims submitted to the government, or to any obligation owed to the government by an unrelated private party.  *See Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671–72 (2008) (where "a defendant makes a false statement

17

to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim 'by the Government,'" and is thus "too attenuated to establish liability."). Thus, there is no allegation that BMO CMC violated the FCA by actively presenting a false claim, or by making or using any statement material to a false claim or reverse false claim, which was presented to MARAD or the Coast Guard.

**B.     Relators Failed to Satisfy Rule 9(b) by Pleading with Particularity that BMO CMC Caused a False Claim to be Submitted or Caused to be Made or Used Any Statement Material to a False Claim or Reverse False Claim.**

Relators similarly failed to allege that BMO CMC *caused* a false or fraudulent claim to be presented or *caused* another to make or use a statement material to a false claim or reverse false claim. *See* 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), (a)(1)(G). To plead causation under Sections 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G), Relators were required to allege facts—with particularity, in compliance with Rule 9(b)—that BMO CMC's conduct was the proximate cause of a false claim submitted to the government, a false statement or record material to such a claim, or a

18

statement or record material to an obligation to pay money or property to the government.  Relators plainly do not (and cannot) plead facts showing that BMO CMC's conduct was the foreseeable and proximate cause of any false claim or reverse false claim submitted to MARAD or the Coast Guard concerning the Vessels.

Although the Second Circuit has not addressed the standard governing causation under the FCA, all Circuits that have considered the issue have held that the FCA requires a proximate causation test.  *See United States v. Luce*, 873 F.3d 999, 1014 (7th Cir. 2017) ("adopt[ing] the proximate cause standard for FCA cases"); *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 715 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 139 (2019); *United States ex rel. Schwedt v. Plan. Rsch. Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995); *United States v. Miller*, 645 F.2d 473, 475–76 (5th Cir. 1981); *United States v. Hibbs*, 568 F.2d 347, 351 (3d Cir. 1977).  Under this standard, there must be a "sufficient nexus between the conduct of the party and the ultimate presentation of the false claim to support liability under the FCA."  *Sikkenga*, 472 F.3d at 714.  This requires allegations of

19

"affirmative acts" and "specific conduct" that "*cause[d]* the presentment of a false claim." *Id.* "[M]ere awareness that another may, or even has, chosen to make such a claim does not alone constitute 'causing a false claim to be presented.'" *United States ex rel. Bassan v. Omnicare, Inc.*, 2025 WL 551610, at *3 (S.D.N.Y. Feb. 19, 2025) (quoting *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 245 (3d Cir. 2004)). It is this proximate causation standard that "separates the wheat from the chaff, allowing FCA claims to proceed against parties who can fairly be said to have caused a claim to be presented to the government, while winnowing out those claims with only attenuated links between the defendants' specific actions and the presentation of the false claim." *Luce*, 873 F.3d at 1012–13 (quoting *Sikkenga*, 472 F.3d at 714).

District Courts in this Circuit have also applied a proximate causation standard to the FCA. *See, e.g.*, *Omnicare, Inc.*, 2025 WL 551610, at *3 ("To 'cause' [a] false claim to be submitted, it must be the natural, ordinary and reasonable consequence of one's conduct."); *United States ex rel. Henig v. Amazon.com, Inc.*, 2025 WL 27736, at *9 (S.D.N.Y. Jan. 3, 2025) (causation under the FCA requires allegations of "proximate cause and foreseeability"); *United States ex rel. McSherry v. SLSCO, L.P.*,

20

2024 WL 1934443, at *3 (E.D.N.Y. May 2, 2024) (same); *United States v. Teva Pharms. USA, Inc.*, 2019 WL 1245656, at *25 (S.D.N.Y. Feb. 27, 2019) ("For a 'cause to be presented' claim, the unlawful behavior must be a 'substantial factor in bringing about [the] filing' of a false claim and the filing must be 'a normal consequence of the situation created by that scheme.'" (quoting *Schmidt*, 386 F.3d at 244–45)). For instance, a party may be liable under the FCA for "causing" the submission of a false claim where claims are rendered false by that party but submitted to the government by another. *See, e.g.*, *United States ex. rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 650 (S.D.N.Y. 2011); *Allison Engine Co.*, 553 U.S. at 671 (causation would be demonstrated where a "subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim").

Here, the Amended Complaint did not allege that BMO CMC's "specific" and "affirmative" conduct *caused* the submission of any of the alleged false claims or *caused* the making or use of a record or statement material to any such claims or reverse false claim. Relators' allegations failed to show that it was foreseeable that BMO CMC's role in financing

21

and marketing the Notes would lead to a false claim for payment from the government, or a statement used to avoid, conceal or decrease an obligation to pay the government. The Amended Complaint is devoid of any plausible allegations that BMO CMC relayed false information to Alpha VesselCo Holdings, Inc., or any other defendant—let alone any false information that was later submitted to MARAD or the Coast Guard. The allegations that BMO CMC "advertised" truthful information to potential investors "to reassure [them] that the new owner of the [Vessels] was merely a figurehead," and to "show" them that "MARAD might be tricked," are not linked to any *particular* facts, as required by Rule 9(b), and are instead attenuated inferences on Relators' part. (A-106-107 ¶¶ 83–85). Nor does the Amended Complaint allege that BMO CMC directed any defendant to omit information from claims or statements submitted to the government. To the contrary, compliance with the AFA's Citizenship Requirement and MARAD's approval of the proposed acquisition were conditions precedent to the Acquisition's closing. (*See* A-98-99 ¶ 59). A few allegations that BMO CMC helped finance a portion of the Acquisition (and nothing more) are far too remote

from any claim or statement submitted to the government to form the basis of an FCA claim against BMO CMC.

For instance, in *Henig*, the court found that the relator failed to plead causation with respect to Amazon where it was alleged only that Amazon was aware that *other parties* "have fallen short of their obligations, without accompanying allegations of proximate cause and foreseeability." 2025 WL 27736, at *9. The court thus found that Amazon did not take "'specific steps to circumvent' the customs duty and hide the false claims made by" non-party foreign manufacturers and that the "false information that Amazon purportedly received and 'passed along' was first presented" to U.S. customs officials by the non-party manufacturers. *Id.* Here, unlike in *Henig*, no party made false statements to the government. But even if they had, Relators have not plausibly pled with particularity under Rule 9(b), as required by the court in *Henig*, that BMO CMC took any specific steps to circumvent any legal duties or hide false information.

Because it is clear that the allegations against BMO CMC did not satisfy the FCA's causation element, Relators resorted to erroneously arguing to the District Court that BMO CMC "*helped 'cause'* the

23

statements to be submitted" solely because of its role in financing the Acquisition.  (A-275 (emphasis added)); *see also id.* ("The scheme would not have succeeded without BMO's money and involvement.")).  However, "but for" causation is not the legal standard and has been explicitly rejected by other Circuit Courts.  The only court to have adopted the but-for standard—the Seventh Circuit in *United States v. First National Bank of Cicero*, 957 F.2d 1362 (7th Cir. 1992)—has since overruled that decision in *Luce*, 873 F.3d at 1014.  In overruling *Cicero* and adopting the proximate causation standard, the *Luce* Court based its decision on a "correct reading of the statutory text" that was "more compatible with the statute's language and purpose."  *Luce*, 873 F.3d at 1014.  In addition, the *Luce* Court adhered to Supreme Court's guidance in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187 (2016), that "[t]he statutory language of the FCA does not suggest that Congress sought to depart from the established common-law understanding of [proximate] causation in fraud cases."  *Luce*, 873 F.3d at 1013–14.

Indeed, "a broad 'but for' test is not in compliance with the [FCA]." *Hibbs,* 568 F.2d at 349.  The term "causes" in the FCA is "hardly boundless," *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647

24

F.3d 377, 391–92 (1st Cir. 2011), and "too broad an interpretation of the 'causes to be presented' language . . . would impose liability on parties merely for failing to prevent the fraudulent acts of others." *Sikkenga*, 472 F.3d at 714. The language of the statute clearly requires that before a relator can recover treble damages the relator *must* demonstrate the element of causation. *Miller*, 645 F.2d at 475–76.

Furthermore, Relators incorrectly argued to the District Court that "circumstantial evidence of recklessness" was sufficient to allege that BMO CMC "helped 'cause' the statements to be submitted," again pointing to BMO CMC's limited role in marketing the Notes. (A-275). This argument is flawed in several respects.

First, knowledge and causation are two separate elements under the FCA, and any allegations of knowledge have no bearing on causation. *See, e.g.*, *United States ex rel. Daugherty v. Tiversa Holding Corp.*, 342 F. Supp. 3d 418, 424 (S.D.N.Y. 2018) (listing as separate FCA elements "made a claim" and "knowing of its falsity"); *see also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) (reckless disregard "captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, *but submit the claims anyway*" (emphasis

25

added)).    Indeed, "mere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish liability under the FCA." *Sikkenga*, 472 F.3d at 714; *United States v. Murphy*, 937 F.2d 1032, 1038–39 (6th Cir. 1991) (allegations of knowledge "do[] not eliminate the need . . . for some action by the defendant whereby the claim is presented or caused to be presented"). While BMO CMC disputes that it had knowledge of the alleged scheme (or that there was a scheme at all), any such allegations have no bearing on whether BMO CMC *caused* any entity to present a false claim to MARAD or the Coast Guard, or to make or use a record or statement material to a false claim or reverse false claim.

Second, while Relators assumed that BMO CMC knew of the alleged scheme and deliberately "took a significant financial risk that MARAD might eventually learn that Alpha was a front," (A-275), the Amended Complaint did not allege any facts to support that BMO CMC took any such risk.    Indeed, BMO CMC only agreed to assist with the financing *after* the relevant information was disclosed to MARAD, and *after* MARAD provided written confirmation, in September 2017, that the Vessels would be eligible for fishery endorsements post-acquisition. (A-

26

100 ¶ 63; A-114 ¶ 104).  Allegations that BMO CMC had knowledge of the same facts disclosed to MARAD and communicated those facts to investors fail to demonstrate that it "knew of the scheme" and recklessly caused false claims to be submitted.

Third, if Relators' theory were correct—*i.e.*, that truthful statements made to investors in relation to a separate transaction can "cause" an unrelated party to submit a false claim to the government— then every entity that helped finance or facilitate the Acquisition, including DNB Capital LLC (which is not a defendant in this action), would arguably be liable for *helping* to cause the submission of the allegedly false statements.  That of course is not the law or the standard for liability under a punitive fraud statute like the FCA.  *See, e.g.*, *Sikkenga*, 472 F.3d at 715 n.17 ("The proximate causation standard strikes the proper analytical balance and comports with the rule requiring strict construction of punitive civil statutes." (citing *Comm'r v. Acker*, 361 U.S. 87, 91 (1959)); *see also Sikkenga*, 472 F.3d at 714 (expressing concern that "too broad an interpretation of the 'causes to be presented' language" would be inconsistent with the statutory text).

Relators thus failed to plead any FCA claim against BMO CMC, because Relators did not plead that BMO CMC presented or caused to be presented a false claim, or that BMO CMC made, used, or caused to be made or used a record or statement material to a false claim or reverse false claim.

## C. Relators Failed to Plead that BMO CMC Conspired to Violate the FCA.

This Court should likewise affirm the District Court's dismissal of the conspiracy claim because, for the reasons set forth *supra* and those set forth in the Cooke and VesselCo Brief, Relators have failed to plead any underlying FCA violation. *See CKD Project, LLC*, 551 F. Supp. 3d at 48 (holding that "Relator's conspiracy claim must also be dismissed" where Relator otherwise "failed to state a claim for violation of the FCA").

Even if this Court determines that Relators successfully stated a claim under the FCA (which they have not), the Amended Complaint still failed to allege a conspiracy involving BMO CMC. Relators were required to allege that (1) BMO CMC "conspired with one or more persons" to violate 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), or (a)(1)(G), and (2) "one or more conspirators performed any act to effect the object of the conspiracy." *United States v. Spectrum Painting Corp.*, 2020 WL

28

5026815, at *15 (S.D.N.Y. Aug. 25, 2020). "Critically, the essence of a conspiracy under the Act is an agreement between two or more persons to commit fraud." *United States ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*, 660 F. Supp. 3d 381, 405–06 (E.D. Pa. 2023) (quotations and alterations omitted). Conspiracy claims under the FCA are therefore subject to the heightened pleading requirements of Rule 9(b). *See, e.g.*, *United States ex rel. Scharff v. Camelot Counseling*, 2016 WL 5416494, at *9 (S.D.N.Y. Sept. 28, 2016); *United States v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, 2014 WL 3905742, at *25 (S.D.N.Y. Aug. 7, 2014).

Relators did not allege with particularity that BMO CMC entered into an agreement with another person or entity to defraud the government. Instead, Relators made the conclusory assertion that "Defendants," without specifying who, "agreed that submissions would be made to MARAD[,] . . . and that those submissions would falsely certify compliance with the AFA Citizenship Requirement and would omit material information relevant to MARAD's citizenship determinations." (A-134 ¶ 169). While Relators allege that Defendants reached this agreement "in 2017 during the negotiations for the Acquisition," that

29

"[t]he purpose of their agreement was to obtain MARAD's approval," and that "Defendants have reaffirmed their agreements each year since 2017," (*id.*), they failed to plead any particularized facts demonstrating that BMO CMC was a party to the alleged agreement, or that BMO CMC "reaffirmed" any agreement with the Cooke or VesselCo Defendants at any time. Rather, Relators alleged that, following the Acquisition, Cooke and Omega controlled the "fishing activities, operations, and staffing" of the Vessels. (A-109 ¶¶ 91-93). *See U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 815 (S.D.N.Y. 2010) (finding complaint "fail[ed] to plead any facts making plausible an unlawful agreement between the parties" where relator "made only conclusory allegations with regards to the claimed conspiracy"). Relators also claimed that BMO CMC took part in the alleged conspiracy because Defendants Cooke Omega Investments Inc. and Alpha VesselCo Holdings, Inc., "together with Defendant BMO Capital, confidentially informed prospective investors of the material facts of Cooke and Omega's expected control over Holdings/Ocean Fleet Services, Alpha VesselCo, and the [Vessels]." (A-134 ¶ 170). As explained *supra*, in Section II.B., this allegation is based on speculation and implausible inferences. *See United States ex rel. Patriarca v.*

30

*Siemens Healthcare Diagnostics, Inc.*, 295 F. Supp. 3d 186, 203–04 (E.D.N.Y. 2018) (dismissing FCA conspiracy claim where "Relator ha[d] alleged conduct that [was] every bit as consistent with a description of [defendant] innocently" carrying out its work "as it [was] with unlawful conduct").

As a result, Relators failed to state a conspiracy claim against BMO CMC for reasons not reached by the District Court, and the District Court's dismissal of Count III should also be affirmed on these grounds.

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's dismissal of the Amended Complaint with prejudice as to BMO CMC.

Dated: New York, New York      **DLA PIPER LLP (US)**
       April 17, 2025

By: */s/ Courtney Saleski*
    Courtney Saleski
    Jessica A. Masella

1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
courtney.saleski@us.dlapiper.com
jessica.masella@us.dlapiper.com

*Attorneys for Defendant-Appellee*
*BMO Capital Markets Corp.*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation in Second Circuit Rule 32.1(a)(4) because it contains 6,246 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

**DLA PIPER LLP (US)**

By: */s/ Courtney Saleski*
    Courtney Saleski
    Jessica A. Masella

1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
courtney.saleski@us.dlapiper.com
jessica.masella@us.dlapiper.com

*Attorneys for Defendant-Appellee*
*BMO Capital Markets Corp.*